# UNITED STATES DISTRICT COURT

for the
District of Colorado

|  |  |  |
|---|---|---|
| In the Matter of the Search of | ) | Case No.  20-sw-00304-NRN |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | |
| information associated with | ) | |
| **thomaswornick@hotmail.com** that is stored at premises | ) | |
| controlled by Microsoft Corp, and more fully described in | ) | |
| Attachment A, attached hereto. | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, Jeremy W. Mathews, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the <u>State and District of Colorado and elsewhere</u> *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit
The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit
The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    X  evidence of a crime;

    X  contraband, fruits of crime, or other items illegally possessed;

    X  property designed for use, intended for use, or used in committing a crime;

    ☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of <u>18 U.S.C. § 875</u>, and the application is based on these facts:
  X  Continued on the attached affidavit, which is incorporated by reference.

  ☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*s/Jeremy W. Mathews*
*Applicant's signature*

Jeremy W. Mathews, Police Detective Pueblo Police Department
*Printed name and title*

Sworn to before me and:  ☐  signed in my presence.
  ☒  submitted, attested to, and acknowledged by reliable electronic means.

Date:  03/16/2020

_____
*Judge's signature*

City and state:  Denver, Colorado

Magistrate Judge N. Reid Neureiter
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with thomaswornick@hotmail.com that is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, a company headquartered at One Microsoft Way, Redmond, WA  98052.

## **ATTACHMENT B**

### **Particular Things to be Seized**

### **I.       Information to be disclosed by Microsoft Corporation**

To the extent that the information described in Attachment A is within the possession, custody, or control of Microsoft Corporation, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to Microsoft Corporation, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Microsoft Corporation is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.       All emails, messages or other communications sent from or received by thomaswornick@hotmail.com from July 2019 to present.

b.       All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.       The types of service utilized by the user;

d.       All records or other information stored by an individual using the account, including names, contact information, IP addresses, phone numbers or physical addresses;

e.      All records pertaining to communications between Microsoft Corporation and any person regarding the account, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 875(c) involving Thomas Wornick since July of 2019 to present, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Any records related to sending and/or making threats to injure or kill other persons or plans to do so, including any records or communications relating to the purchase or acquiring of firearms and/or ammunition.

(b) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(c) The identity of the person(s) who communicated with the user ID about matters relating to threats to kill or injure other persons and attempts to obtain firearms and/or ammunition, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in

2

addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC</u> <u>RECORDS PURSUANT TO FEDERAL RULES OF</u> <u>EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Microsoft Corporation, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Microsoft Corporation.  The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.       all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Microsoft Corporation, and they were made by Microsoft Corporation as a regular practice; and

b.       such records were generated by Microsoft Corporation's electronic process or system that produces an accurate result, to wit:

1.       the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Microsoft Corporation in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Microsoft Corporation, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____

Date                                 Signature

**IN THE UNITED STATES DISTRICT COURT
FOR COLORADO**

| | |
|---|---|
| In the matter of the search of information associated with **thomaswornick@hotmail.com** that is stored at premises controlled by Microsoft Corp. | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Jeremy W. Mathews, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, an electronic communications service/remote computing service provider headquartered at One Microsoft Way, Redmond, WA  98052.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft Corporation to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      I am a commissioned Police Detective with the Pueblo Police Department (PPD), currently assigned as a TFO with the FBI and have been since 2016.  I have over 19 years of law enforcement experience, including with the Pueblo Police Department.  I am currently assigned to the Denver Division of the FBI, and specifically to the Southern Colorado Safe Streets Task

Force.  I investigate violent crimes, threats, and communication offenses in the normal course of

his duties and is fully familiar with the facts of the case.

3.      I have received training and instruction in the field of interstate communications

and have had the opportunity to participate in investigations relating to interstate

communications.  I participated in investigations involving electronic evidence, emails, text

messages, and the internet.  My duties include investigating Threats in Interstate

Communications, in violation of 18 U.S.C. § 875(c).

4.      The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set

forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that violations of 18 U.S.C. § 875(c) have been committed by

THOMAS WORNICK.  There is also probable cause to search the information described in

Attachment A for evidence of these crimes further described in Attachment B.

## **JURISDICTION**

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

**PROBABLE CAUSE**

**INITIAL CONTACT WITH WORNICK IN 2019**

7.      On July 4th, 2019, at approximately 12:49 P.M. Deputies with the Pueblo County

Sheriff's Office (PCSO) responded to a call at 899 E. Industrial Blvd; Parkview West Hospital.

Deputies had received a call of a disorderly male who was refused treatment due to his behavior.

Deputies were advised the male, later identified as a Thomas WORNICK (DOB: 10/28/1982)

was outside screaming in the parking lot. Sergeant Ben Parsons arrived at the area first and was

advised by medical personal Thomas had entered a vehicle, but they had not seen him leave.

8.      PCSO Sergeant Parsons located WORNICK in the passenger seat of a blue in

color Chevrolet Trailblazer bearing Colorado license plate BFH-L99, which Deputies later

learned listed to WORNICK. Sergeant Parsons made contact with WORNICK who stated he

wanted to press assault charges on the people inside the hospital. Sergeant Parsons asked

WORNICK if the Chevy Trailblazer was his car. WORNICK replied to Sergeant Parsons saying,

"this is not a car, you're a police officer and you don't know the difference." Sergeant Parsons

apologized as WORNICK again stated he wanted to press charges against hospital staff. Sergeant

Parsons again asked him if this was his vehicle. WORNICK told Sergeant Parsons "you answer

my questions first."  PCSO Deputy Franklin and PCSO Deputy S. Chavez were present during

this exchange.

9.      WORNICK screamed at Deputies that he wanted his shirt and was being very

argumentative.  Deputy Chavez went inside the hospital to retrieve WORNICK'S shirt.

3

WORNICK was given his shirt and exited the vehicle. WORNICK said the vehicle belonged to his friend. WORNICK continued to be belligerent with Deputies, but provided his identification, and sat back in his vehicle. WORNICK yelled obscenities at Deputies during the entire contact. WORNICK stated his Veteran's Administration (VA) caregiver, Christy Burnett (DOB 11/05/1976) was inside the hospital and they could talk to her. Deputies learned Burnett was in the hospital for an exam.

10.     Burnett exited the hospital and WORNICK said he needed an ambulance to Parkview Hospital (Main) for back pain. Burnett said she would drive him, but WORNICK refused and was transported to Parkview Main by American Medical Response (AMR).

## INFORMATION ON THREATS

11.     On January 4, 2020 Deputies received an anonymous online tip. In the narrative and most other portions of the tip the person wrote "kill all sheriffs deputies" several times. In the "suspect name" portion of the tip was "Parsons, Franklin and Chavez." In the Offense type, Assault was listed, Victim's Name said "me", How are you aware of the abuse "I was there", and Type of Abuse "Police Brutality." Sergeant Parsons believed WORNICK was the person who submitted the tip as all three Deputies mentioned were on the previous call with WORNICK who claimed he was mistreated during their previous contact.

12.     On February 7, 2020, Detectives with PCSO responded to WORNICK's residence at 1539 E 12th St., Pueblo, Colorado, to speak to him about the tip. Detectives contacted Burnett who stated WORNICK had severe PTSD and did not want any contact. While Detectives were

4

speaking to Burnett, WORNICK activated his panic alarm and was heard yelling obscenities at Detectives, from inside the residence.  Burnett said she would talk to WORNICK but she would not cooperate further.  To avoid further aggravating WORNICK, Detectives left the area.

## EMAIL THREATS

13.     On March 9, 2020, PCSO Communications Center notified Sergeant Parsons of several emails sent by WORNICK.  The emails were sent to individuals, businesses, and attorneys stating WORNICK was going to kill every pueblo county sheriff deputy.  The email was received by Pueblo Waste Management employee, Brett Anderson (YOB 1981).

14.      The email read:  "Effective immediately I am going to hunt down and kill every pueblo sheriff deputy. On the 4th of July 2019, deputies Chavez franklin and parsons assaulted me, no arrest, no ticket no citation, just me in the hospital.  After getting blown up in Iraq twice and living in pain everyday of my life because of my service to this nation these incompetent officers attacked me, the pueblo sherriff's department refuses to accept responsibility To that effect, I will use the skills the united states government trained me, and I will hunt down and kill every pueblo sheriff deputy the true enemy of the people, I have sworn a oath to defend this nation from all threats, pueblo sheriff deputies need to die in order to get me justice.  Fuck the home of heroes Thomas wornick Disabled combat veteran"

15.     PCSO Sergeant Troy Kochevar; Karrington Valenzuela of Lambert Law Team; and Frank Moya, an attorney from Denver, reported receiving the same email as Brett Anderson described above.  Sergeant Parsons also learned several others received the same email from

WORNICK, including the following:  "Mark" from KKTV; Planning Land Use Pueblo

(forwarded to PPD Dispatch Supervisor Laura Wittrup); Aaron Emerson with Pueblo Public

Works; and "John" with Pueblo County Internet Technology.  As described later in paragraph

19, WORNICK admitted all of these emails were sent from his email account,

thomaswornick@hotmail.com.

16.     March 9, 2020, the PCSO received information from the Office of United States

Senator Cory Gardner stating their office received the following email from

thomaswornick@hotmail.com: "In 2003 I deployed to Iraq, I was blown up by an ied in my

hmmwv and blown up again by a rocket weeks later, I suffer everyday of my life for my server

to this nation, because cory gardner refuses to help me get medical care for my service connected

injuries, I cannot live with the pain anymore, I am going to hunt down and kill every pueblo

sheriff deputy then I am going to hunt down and kill senator cory gardner for refusing to help me

get medical care, I sarficied my whole fucking life for this nation, and this nation refuses to give

me medical care for my combat injuries, I got no choice left but to kill cory gardner so that the

rest of the world will at least know that I server this nation and this nation shit on me"

**INTERVIEW OF CHLOE COLEMAN**

17.     Also on March 9, 2020 PPD Sergeant A. Martinez reported (PPD 20-4651) the

same email from WORNICK was sent to Raylene Johnson (YOB 1984) with Junior League of

Pueblo; Pueblo City Transit; Pueblo Planning Department; Pueblo Wastewater; Pueblo Human

Resources; Pueblo City Clerk's Office; City Administrative email; and Department Head of

Pueblo City Shops, Sam Ingo.  This information was passed on the PPD Corporal W. Doyle who was the School Resource Officer for East High School.

18.     Corporal Doyle contacted student Chloe Coleman (YOB 2002) who lived with WORNICK.  Coleman said WORNICK lived with her and her mother.  Coleman said WORNICK had a brain injury, a short fuse, got angry easily, and was a very good interrogator and would twist your words in his favor.  Coleman said the FBI had contacted her mother in the past over WORNICK'S emails.  Coleman said WORNICK had made threats in the past and mentioned a bomb threat.  Coleman said WORNICK had a non-hunting rifle and a .22 caliber rifle.  Coleman said if WORNICK saw officers sneaking around the house instead of obviously coming to the front door he would probably shoot at them.

**SEARCH OF WORNICK'S RESIDENCE**

19.     On 03/9/2020, PCSO Detective R. Landreth applied for and was granted a search warrant in the 10th Judicial District, Pueblo County, CO, for WORNICK'S residence at 1539 E 12th St.  When the warrant was executed, some of the evidence collected included: HP computer, four hard drives, a .22 caliber rifle, 45 live .22 caliber rounds, an AR-15, 14 boxes of 5.56mm ammunition, ten live 5.56mm rounds from the magazine in the AR-15, a bayonet, and several other knives.  A search of the computer has not yet taken place but based on other facts in this affidavit including WORNICK'S admission, it would reasonably contain additional evidence of violations of 18 USC 875(c).

## INTERVIEW OF WORNICK

20.     On 3/9/2020, FBI Special Agent David Tsang conducted a non-custodial interview of WORNICK at the Commissary on Fort Carson, CO. WORNICK was Mirandized at the start of the interview, waived his rights and signed the advice of rights waiver. Also present for the interview was WORNICK'S girlfriend/caretaker (Burnett). During the interview, WORNICK admitted to sending threats to multiple government agencies to include Pueblo Sheriff's Office, the Office of Senator Cory Gardner, and the President of the United States. WORNICK stated he will kill Pueblo Deputies because they refuse to accept responsibility for injuries he claimed they caused him on 7/4/19.

21.     WORNICK also threatened to kill Senator Gardner because Senator Gardner failed to fulfill the promises his office made to get him medical care from the VA. WORNICK stated he is prepared to die because he is in so much pain and does not have anything to live for. WORNICK stated he is not under any illusion that he can kill all of the Pueblo County Sheriff's Officers but believes if he can kill just one then his manifesto will be read. WORNICK admitted he has an AR15 rifle that he purchased from the Ft. Carson PX and he is well versed in the weapon. He indicated he would use this weapon to carry out his threats. He also advised his threats were not threats but promises if he does not get medical treatment.  WORNICK confirmed thomaswornick@hotmail.com was his email account.

## INTERSTATE COMMUNICATION NEXUS

22.     WORNICK sent the messages from his computer in his residence in Pueblo, CO. WORNICK'S email was a Hotmail account, which is operated by Microsoft Online Services at One Microsoft Way, Redmond, WA 98052.  The City of Pueblo and County of Pueblo who operate the majority of the effected emails, utilized the Microsoft Government Cloud and Office 365, which are also serviced by Microsoft Online Services in Redmond, WA.  The emails do not necessarily get processed in Washington but may go through one of several Microsoft Data Centers around the United States.  All Microsoft Government Cloud clients are operated within the United States.  There are no Microsoft Data Centers in the state of Colorado so all outgoing and incoming messages would cross state lines.  Affiant is not an expert in these matters and consulted City of Pueblo Internet Technology, Senior Systems Administrator, Brian Popp to gather this information.

## CONCLUSION

23.     WORNICK sent threatening emails to numerous individuals and government entities, directly threatening to kill three Pueblo County Deputies and United States Senator Cory Gardner, and President Donald Trump.  During a search warrant of WORNICK'S residence multiple firearms, knives, and ammunition, which could have been used to carry out these threats were located.  WORNICK admitted the email used to send these threats was his email. WORNICK admitted he planned to use the AR-15 located in his residence to kill the people he threatened.  WORNICK said these were not threats but promises if he did not get help from the government.

9

24.     Based on the aforementioned information, probable cause exists that on or about March 9, 2020, in the State and District of Colorado, the defendant, THOMAS AUTHER WORNICK, did transmit in interstate or foreign commerce any communication containing any threat to injure the person of another, in violation of Title 18 U.S.C. § 875(c).

25.     As such, your Affiant respectfully requests that the Court issue a search warrant for the email account used by WORNICK to send his threats, specifically thomaswornick@hotmail.com.

26.     In general, providers like Microsoft Corporation ask each of their subscribers to provide certain personal identifying information when registering for an ACCOUNT.  This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

27.     Providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account.  In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP

address information can help to identify which computers or other devices were used to access the ACCOUNT.

28.     In some cases, ACCOUNT users will communicate directly with a provider about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users.  Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

29.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Microsoft Corporation to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

///

///

## CONCLUSION

30.     Based on the forgoing, I request that the Court issue the proposed search warrant.

s/Jeremy W. Matthews _____ _____
Jeremy W. Matthews, Detective / Task Force Officer
Pueblo PD/FBI SSTF

SUBSCRIBED and SWORN before me this ___16___ day of March, 2020

_____
UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by Gregory Holloway, Assistant
United States Attorney.